Susan Mary Rotkis, AZ Bar No. 032866
Consumer Attorneys
2290 East Speedway Blvd.
Tucson, AZ 85719
T:602-807-1504
F: 718-715-1750
E: srotkis@consumerattorneys.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Sydney Lewis, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Sterling Infosystems, Inc. <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

<ins>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</ins>

PLAINTIFF SYDNEY LEWIS, individually and on behalf of all others similarly situated, files this Class Action Complaint and states as follows:

1.      Ms. Lewis brings this action against Defendant Sterling Infosystems, Inc. ("Sterling") for its violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2.      Congress passed the FCRA to protect consumers from the harm caused by inaccurate reporting.  To this end, the FCRA requires that all consumer reporting agencies (CRAs) that report criminal background information use "reasonable

1

procedures to ensure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

3.      The FCRA provides special protections when a CRA furnishes "items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment." 15 U.S.C. § 1681k. In these situations, CRAs must either: (1) notify the consumer of the release of the public record information at the time the information is furnished to the user; or (2) establish strict procedures to maintain complete and up-to-date public record information.

4.      Plaintiff brings this action on behalf of hundreds, if not thousands, of consumers throughout the country who have been the subject of unfair, prejudicial, misleading and illegal background reports performed by Defendant and sold to employers and other third parties.

5.      Defendant has adopted and maintained a policy and practice of knowingly, intentionally, recklessly and willfully reporting offense types in consumer reports that are not accurate and that cause damage to the subjects of the reports.

6.      Defendant's practice harms consumers reputations by disseminating misleading and inaccurate information about them to third parties, including prejudicing their employers and prospective employers with such inaccurate information, and also harms interstate commerce as a whole.

//

1

2

**JURISDICTION AND VENUE**

3       7.      This Court has federal question jurisdiction over Plaintiff's claims

4    pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5       8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as Defendant

6    regularly conducts business in this district and division, and a substantial part of the

7    events giving rise to the claims occurred in this district and division.

8       9.      Defendant has contracted to supply services or things in Arizona.

9

10      10.     Defendant sells consumer reports in Arizona and produces consumer

11   reports on Arizona residents.

12      11.     Defendant also gathers and maintains substantial public records data from

13   Arizona.

14

15                                **PARTIES**

16      12.     Ms. Lewis is a resident of Arizona.  She is a natural person and a

17   "consumer" as protected and governed by the FCRA, 15 U.S.C. § 1681a(c).

18

19      13.     Defendant is a Delaware corporation that conducts business throughout

20   the United States. Sterling can be served through its registered agent, Paracorp

21   Incorporated, located at 8825 N 23rd Ave., Suite 100, Phoenix, AZ 85021.

22      14.     At all relevant times hereto, Defendant was a consumer reporting agency,

23   as defined by 15 U.S.C. § 1681a(f).

24

25

26

27   //

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FACTUAL ALLEGATIONS

**Defendant's Practices As A Consumer Reporting Agency And Furnisher Of Consumer Information For Employment and Other Purposes**

15.     The FCRA regulates the collection, maintenance, and disclosure of consumer reports by CRAs, including public record information.

16.     Defendant investigates and reviews public record databases and maintains consumer files which contain public record information concerning, among other things, the alleged criminal record history of individuals.

17.     From its files, Defendant sells consumer reports to potential employers wishing to investigate the criminal record history, or lack thereof, with regard to various employees and job applicants.

18.     Defendant has a policy and procedure whereby it reviews public record databases and obtains bulk data obtained from third-party vendors concerning public records.

19.     Using the data obtained from third-party data vendors, Defendant assembles and/or maintains consumer files that contain information concerning, among other things, the alleged criminal history of consumers.

20.     Defendant engages in this conduct because the acquisition of public record data from third-party vendors, despite the prevalence of inaccurate information contained therein, is significantly cheaper and faster than the acquisition of accurate information obtained by reviewing the actual physical court files.

21.    Defendant's policies and procedures prioritize speed and volume over accuracy.  Indeed, Defendant advertises on its website that it sells more than 103 million background checks annually, including 70% of criminal searches closing in 1 hour.

22.    Defendant's policies and procedures do not include contacting court clerks or reviewing actual court files to verify the accuracy of the information in its consumer files prior to issuing a report about the alleged criminal history of a consumer.

23.    Defendant's policies and procedures do not include the independent review of the bulk criminal history data it acquires.

24.    Defendant relies exclusively upon consumer disputes to identify inaccuracies in its consumer files with respect to the alleged criminal histories of those consumers.

25.    As a result of its established policies and procedures, including its reliance on data obtained from third-party vendors and other sources, Defendant regularly and unlawfully reports inaccurate offense levels in its consumer reports.

26.    For example, Defendant regularly and unlawfully reports misdemeanor offenses as felony offenses.

27.    Defendant does and should know that it is unlawfully reporting inaccurate offense levels in its consumer reports, as it receives hundreds, if not thousands, of disputes from consumers on this issue and it issues revised reports for a significant number of these disputes.

28.     Defendant is on express notice that the information that it obtains electronically from Arizona and other courts around the country is not reliable and that the actual court records must be used to verify the electronic information.

29.     In Arizona, for instance, the Arizona Courts publish a prominent disclaimer of accuracy to all users of the electronic public criminal records that reads in pertinent part:

**Please be aware of the following limitations of the case records displayed:**
The information may not be a current, accurate, or complete record of the case.
The information is subject to change at any time.
The information is not the official record of the court.
Not all cases from a participating court may be included.
The information should not be used as a substitute for a thorough background search
of official public records.

**The user is responsible for verifying information provided on this website against official court information filed at the court of record.** Use of this website shall indicate agreement by the user that the Arizona judiciary, including its courts, divisions, officers, and employees, shall not be liable for any loss, consequence, or damage resulting directly or indirectly from the use of any of the information available through this website and that the Arizona judiciary does not provide any warranty, express or implied, that the information provided is accurate, current, correct, or complete.

30.     Upon information and belief, each state that makes such criminal public records available has a similar disclaimer as to the accuracy of the information.

31.     Defendant is on express notice that information it may obtain from statewide public criminal record information services disclaims accuracy of the information and that the actual court records must be used to verify the information.

32.     In Arizona, for instance, electronic criminal public record information is made available to Defendant for a subscription, which subscription agreement disclaims the accuracy of the information.

33.     Upon information and belief, each state that makes such criminal public records available as a subscription has a similar disclaimer as to the accuracy of the information.

34.     Despite the express disclaimers of accuracy, the fact that the records obtained and used by Defendant are not the actual court records, Defendant publishes such information about the Plaintiff and other consumers to third parties without verifying the true disposition in the official court records.

35.     Defendant claims to be accredited by the Professional Background Screening Association (PBSA), thus it is presumed to be apprised of its duties under the FCRA to follow reasonable procedures to assure maximum possible accuracy in a report that it publishes about a consumer.

36.     Because Defendant is on express notice that it may not rely on anything other than the official court records from the originating jurisdiction, it is unreasonable to fail to obtain or verify such information before publishing it to a third party.

37.     Defendant's practice not only violates the FCRA as a matter of law, but it also exacts serious consequences on consumers, job applicants, and interstate commerce.

38.     When consumers have been reported as having criminal records that they do not have, it harms their reputations, and they are viewed as less desirable job

applicants and more likely not to be hired or continue to be employed by the employers who pay Defendant for such reports.

### Facts Specific to Plaintiff

39.    The Center for Autism and Related Disorders ("Card") made Ms. Lewis an employment offer as a Behavioral Therapist in April 2024.

40.    She was qualified for the job.

41.    The employment offer was subject to the successful completion of a background check.

42.    As part of its hiring process, Card purchased a consumer report on Ms. Lewis from Defendant.

43.    The consumer report that Defendant furnished to Card was used or expected to be used or collected for the purpose of evaluating a consumer for employment purposes.

44.    The consumer information that Defendant gathered about the Plaintiff was used or expected to be used for a consumer report.

45.    The consumer report that Defendant furnished to Card contained public record information likely to have an adverse effect on Ms. Lewis's ability to obtain employment.

46.    Defendant did not notify Plaintiff that it was reporting public record information about her at the time it furnished such information to Card.

47.     Defendant did not maintain a procedure to ensure that the criminal public record information in the report was complete and up to date at the time it reported the information to Card

48.     Defendant does not, and did not in this case, obtain or verify the information it gathered and published about the Plaintiff from official court records before publishing it to a third party employer.

49.     Shortly after Card obtained the consumer report from Defendant, it told Ms. Lewis that her background report showed that she had a felony conviction and, because of the felony conviction, she would not be able to work for Card.

50.     Card's decision was devastating for Ms. Lewis.

51.     Ms. Lewis was strapped with a false and outrageous criminal history because she has no felony conviction, and Defendant was reporting inaccurate information about her.

52.     Once she obtained Defendant's consumer report, she discovered the source of the problem.  Defendant had reported that Ms. Lewis had a felony conviction.

53.     Ms. Lewis does not have a felony conviction.   Instead, she has a misdemeanor conviction.

54.     To try to correct Defendant's consumer report, Ms. Lewis filed a dispute with Defendant.

55.     Upon information and belief, Defendant investigated the dispute and discovered that it had reported inaccurate criminal record information about Ms. Lewis.

56.    On May 2, 2024, Defendant amended its consumer report and provided the results of the reinvestigation to Ms. Lewis.

57.    In the amended consumer report, Defendant no longer reported Ms. Lewis as having a felony conviction.  Instead, it correctly reported that she had a misdemeanor..

58.    Despite the amended consumer report removing the false felony conviction, the harm Ms. Lewis suffered as a result of Defendant's actions was particularized and concrete because Defendant disseminated inaccurate, materially misleading, and defamatory criminal record information about her to a third party.

59.    The harm Defendant visited upon Ms. Lewis was the very harm that the FCRA was designed to prevent and address when employees and job applicants are the subjects of employment purposed consumer reports.

60.    The harm that Ms. Lewis suffered is akin to the common law tort of defamation and specifically, in Arizona, would constitute libel per se.

61.    In addition, the Plaintiff was also injured when she lost a job as a direct result of Defendant's conduct.

**CLASS ALLEGATIONS**

62.    Plaintiff brings this action individually and pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

The False Criminal History Class

> (a) All natural persons residing within the United States and its Territories (i) beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, (ii) about whom Defendant furnished a consumer report to a third party, (iii) whose report contained

one or more items of criminal record information for which the description of the offense type/charge level of the criminal record listed on the report was higher than the charge type/charge level of the true final disposition listed on the public record.

The Correction Class

(b)  All natural persons residing within the United States and its Territories (i) beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, (ii) about whom Defendant furnished a consumer report to a third party, (iii) whose report contained one or more items of criminal record information, (iv) who disputed the description of the offense type/charge level of the criminal record included on the report, and (v) whose disputes resulted in a correction to the description of the offense type/charge level to a lower level offense.

63.    The Plaintiff is a member of the classes.

64.    Courts have certified similar classes involving CRAs that reported inaccurate offense types/charge levels.  *See, e.g.*, *Shekar v. Accurate Background, Inc.*, No. 2:17-cv-00585-LA (E.D. Wis. July 24, 2020).

65.    Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

66.    **Numerosity.  Fed. R. Civ. P. 23(a)(1).**  The members of the Classes are so numerous that joinder of all is impractical. Upon information and belief, the number of job applicants and employees harmed by Defendant's practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendant. Defendant is one of the largest purveyors of consumer reports with over 50,000 clients

throughout the world. Over 90% of the consumer reports sold by Sterling are done by automation within minutes without ever checking the accuracy of the information it sells about the consumer. Thus, the number of consumer victims of Sterling's fast and automated process is likely in the thousands.

67.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individuals.    The common legal and factual questions include, among others, whether Defendant willfully violated Section 1681e(b) by reporting inaccurate offense levels in its consumer reports by failing to use reasonable procedures to assure that the information was as maximally accurate as possible.

68.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of each Class Member.  Plaintiff has the same claims for statutory and punitive damages as Class members, arising out of Defendant's common course of conduct is not only typical of the class, but it is identical.

69.    **Adequacy**.    **Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Class because her interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, she has retained counsel competent and experienced in both class action and FCRA litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Classes.

70. **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

**FIRST CLAIM FOR RELIEF**
**Class Claim**
**(15 U.S.C. § 1681e(b))**

71. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

72. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report furnished regarding Plaintiff and others similarly situated.

73.     Defendant knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau, and in well-established case law.

74.     Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

75.     Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiff and others similarly situated of their rights under the FCRA.

76.     Defendant's violations of the FCRA were willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.

77.     Additionally, Plaintiff and similarly situated individuals are entitled to punitive damages, costs, and reasonable attorneys' fees as provided by 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, along with such other and further relief against Defendant as may be just and proper.

**SECOND CLAIM FOR RLEIEF**
**Individual Claim**
**(15 U.S.C. § 1681k(a))**

78.     Plaintiff relies on the foregoing paragraphs to form the basis of the second claim for relief, in particular paragraphs 46-47.

79.     Section 1681k(a) of the FCRA requires that when a consumer reporting agency supplies public record information to a user for employment purposes, and such information is likely to have an adverse effect on employment, the CRA must:

(1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

(2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

80.    Defendant violated 15 U.S.C. § 1681k(a) by failing to notify Plaintiff that it was reporting public record information about her at the time it furnished such information to her prospective employer, and by failing to maintain strict procedures to ensure that the public record information it was reporting was complete and up to date.

81.    Defendant knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, Consumer Financial Protection Bureau, and in well-established case law.

82.    Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

83.    Despite knowing of these legal obligations, Defendant acted consciously or recklessly in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

84.    Defendant's violation of 15 U.S.C. § 1681k was willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

85.    As a result of this conduct by Defendant, Plaintiff suffered actual damages including without limitation, by example only and as described herein on her behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

On the First Claim for Relief:

      a.  An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

      b.  Actual, statutory and punitive damages to be determined by the jury;

      c.  Attorneys' fees;

      d.  Costs of the action;

      e.  Such other relief as the Court deems just and proper.

On the Second Claim for Relief:

      a.  Actual, statutory, and punitive damages to be determined by the jury;

      b.  Attorneys' fees;

      c.  Costs of the action;

      d.  Such other relief as the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

PLAINTIFF hereby demands a jury trial on all claims for which she has a right to a jury.

Respectfully submitted,

*<u>By: /s/ Susan Mary Rotkis</u>*
Susan Mary Rotkis
AZ Bar No. 032866
Consumer Attorneys
2290 East Speedway Blvd.
Tucson, AZ 85719
T: 602-807-1504
E: srotkis@consumerattorneys.com

Jeffrey B. Sand*
**WEINER & SAND LLC**
800 Battery Avenue SE, Suite 100
Atlanta, GA  30339
P: (404) 205-5029
F: (866) 800-1482
E: js@wsjustice.com

**Pro hac vice* application to be filed

*Attorneys for Plaintiff*

17